FRANK ALLIY *vs.* TRAVELERS INSURANCE COMPANY.

No. 94-P-1957.

Suffolk. November 20, 1995. - January 24, 1996.

Present: PERRETTA, KASS, & SMITH, JJ.

*Workers' Compensation Act,* Attorney's fees, Costs. *Attorney at Law,* Compensation, Assessment of costs.

An attorney who filed a claim on behalf of his client for payment of the automatic penalty under G. L. c. 152, § 7, for an insurer's failure to pay timely workers' compensation benefits, was entitled to payment of his fee and costs by the insurer pursuant to the provisions of G. L. c. 152, § 13A, as appearing in St. 1987, c. 691, § 8 [690-691]; that a nonlawyer under the attorney's supervision negotiated with the insurer and appeared with the employee at a conciliation conference did not remove the matter from the purview of § 13A [691-692].

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Robert J. Marquis* for the employee.

*Lisa M. Carmody* for the insurer.

KASS, J. An injured employee's lawyer did the following to recover an underpayment of $65.56 in his client's disability benefits under G. L. c. 152, § 34, as appearing in St. 1985, c. 572, § 42: 1) he filed a claim for the unpaid benefits on a form available from the Department of Industrial Accidents (DIA); 2) he assigned a man in his office, who was not a member of the bar (we shall refer to him as a lay advocate), to discuss with the insurer the basis of the employee's claim; and 3) he assigned the lay advocate to accompany the employee to a conciliation conference at the DIA. The question that the parties dispute is whether that activity constituted lawyering sufficient to trigger the application of G. L. c. 152, § 13A, as appearing in St. 1987, c. 691, § 8, which requires that an insurer defray the reasonable costs of counsel re-

tained by the employee. We think that it was sufficient and reverse a decision of the DIA denying payment of legal fees.

We set out some additional facts. The employee was hurt on April 14, 1989, and the insurer received a first report of the injury on May 1, 1989. On June 1, 1989, the insurer agreed to pay disability benefits, but, as noted above, underpaid by $65.56. Under G. L. c. 152, § 7, as amended by St. 1986, c. 662, § 9, an insurer, within fourteen days of receiving notice of injury, must either commence payments or give written notice of intent to contest the claim. In this instance, the insurer violated § 7 by failing to respond within fourteen days and by being short — probably through inadvertence — on the benefits. Violation of § 7 carries a penalty in an amount equal to twice the average weekly wage in effect in the Commonwealth at the time. G. L. c. 152, § 7(2). Application of that formula to this case produced a number of $948.94. Prior to the conciliation session at the DIA, the lay advocate reached agreement with the insurer that the amount due the employee was, indeed, $65.56 plus the penalty and joined in reporting to a DIA conciliator the signing of a writing that memorialized the agreement.

Thereafter, on November 6, 1989, the employee's lawyer applied for payment of his legal fees by the insurer, conformably with G. L. c. 152, § 13A(1), as appearing in St. 1987, c. 691, § 8, which, so far as pertinent, provided: "Whenever an insurer contests a written claim for benefits . . . by failing to commence compensation within fourteen days of receipt of such a claim, and then . . . agrees to pay . . . the compensation due . . . [the] insurer shall pay an attorney's fee sufficient to defray the reasonable costs of counsel retained by the employee." Again, a formula based on the average weekly wage in Massachusetts established the amount of the fee, with a fifty per cent reduction if the attorney did not appear at a scheduled conciliation.[1] As the attorney did

---

[1]Statutes 1991, c. 398, § 35, amended § 13A so that the fee to be paid employee's counsel, rather than being arrived at on the basis of a formula, was set at $700, or half that, i.e., $350, if the attorney did not appear at a

not himself appear at the conciliation session, he applied for the lesser amount, viz., $474.47.

An administrative judge of the DIA, heard the fee controversy without taking any testimony, i.e., he considered the case on the basis of the papers, briefs and, perhaps, argument. The administrative judge thought the claim for legal fees was "an abuse of the [w]orkers [c]ompensation system" that "should be discouraged emphatically" and that the claim was "brought without reasonable ground." Having so decided, the judge dismissed the claim and further manifested his displeasure by requiring the lawyer to pay $650 to the Workers' Compensation Special Trust Fund. The three judge reviewing board affirmed summarily.

In arriving at his decision, the administrative judge erroneously "found" that the "only actual claim was an underpayment of § 34 benefits." The employee's claim included the penalty payable under § 7 which, in dollar terms, was more significant than the § 34 benefits. The judge also "found" that "if either the [e]mployee or his attorney had simply picked up a telephone or written a letter to the [i]nsurer the matter of the underpayment would probably have been resolved in a matter of days." It will be recalled that the judge took no testimony. Nothing in the record supports the supposition that the attorney did not call or write the insurer about the matter of the underpayment. The judge's implied finding that no such communication was made and how the insurer would have reacted had it been made is pure speculation.

One may understand the administrative judge's distaste for the pumping of a $65.56 underpayment up to an aggregate recovery of $1,488.97, but the governing statutes, G. L. c. 152, §§ 7 and 13A, authorize just such a possibility.[2] The legislative purpose in the statutory scheme is not elusive. By providing for an automatic (if claimed) penalty in § 7 for

---

scheduled conciliation. This later measure for counsel fees does not apply to the instant case.

[2]Runups from a comparatively modest underpayment to a far higher ultimate judgment are not without precedent. In *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85 (1983), an underpayment of $2,000 resulted in a judgment that, inclusive of interest, exceeded $500,000.

failing to respond within fourteen days and providing for the recovery of legal fees (calculated pursuant to formula) and costs in § 13A, the Legislature has chosen to discourage dilatory handling of injury claims arising out of industrial accidents and conversely encourages efficient handling of those claims. Good faith tests as to underpayment or delay are conspicuously absent from §§ 7 and 13A, so that the statutes may operate without further adjudication of the merits of claims for penalties or fees, other than the core question of whether the triggering events have occurred, viz., late response in the case of § 7 and the appearance in the picture of a lawyer to claim a benefit in the case of § 13A.

Both § 7 and § 13A were rewritten as part of comprehensive amendments to G. L. c. 152 made by St. 1991, c. 398. The penalty and fee provisions were retained, and the self-enforcing design of the statute enhanced by a substitution of flat dollar amounts for formulas to arrive at the amount, respectively, of penalty and legal fees.

We turn to the question whether the lawyer's participation in this case was sufficient to bring § 13A into play. The original employee's claim form bears the signature (albeit indecipherable) of the employee's attorney. Whether the signature is that of Mr. James N. Ellis, Jr., or someone else from the Ellis office is not material because the knowledge and judgment of the lawyers in that office determined that the employee had a colorable claim against the insurer and the manner and means by which the claim should be pursued. At the next step at which services were rendered, the lay advocate spoke with a representative (who was also not a member of the bar) of the insurer. Whatever he said was sufficiently to the point that the insurer conceded its liability for the underpayment and the penalty.

It is the common practice of lawyers to use the services of personnel who they train to perform tasks of a nature that involve neither the giving of legal advice nor appearance in a court of law. Cf. *Stowe* v. *Bologna*, 417 Mass. 199, 201 n.3 (1994); *Miller* v. *Commissioner of Correction*, 36 Mass. App. Ct. 114, 121 n.9 (1994). To do so is a cost effective way

of delivering legal services, but itself, of course, involves some cost. See *Missouri* v. *Jenkins*, 491 U.S. 274, 285-288 (1989). We are of opinion that the use of a lay advocate to perform relatively simple functions under the direction of a lawyer who has ultimate responsibility for the case does not disqualify the lawyer from claiming the fee for which the statute provides. Payment of such legal costs as have occurred permits the employee in such cases to have the full value of the workers' compensation benefits.

The decision of the reviewing board denying payment of counsel fees under G. L. c. 152, § 10A, and imposing sanctions on Mr. James N. Ellis, Jr., is reversed. The case is remanded to the DIA for entry of a decision awarding to Mr. Ellis $ 474.47.

*So ordered.*