## STANLEY E. WALKER'S CASE.

Suffolk. January 5, 2009. - March 10, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Workers' Compensation Act,* Compensation, Average weekly wages. *Administrative Law,* Agency's interpretation of statute. *Statute,* Construction. *Words,* "Final decision."

In a worker's compensation matter before the reviewing board of the Department of Industrial Accidents (board) on remand following review by this court of the board's decision, the board did not err in ruling that its original decision (which established the employee's entitlement to compensation), rather than its later amended decision or this court's decision on review (which reversed the original decision in one respect), was the "final decision" for purposes of calculating the Statewide average weekly wage under G. L. c. 152, § 51A, in determining the employee's award of compensation. [361-365]

APPEAL from a decision of the Industrial Accident Reviewing Board.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Paul M. Moretti* for the employee.

*Kathleen A. Moore-Kocot* for the employer.

MARSHALL, C.J. We once again have before us Stanley Walker's claim for compensation, pursuant to G. L. c. 152, § 36, for specific injuries he suffered in 1995. See *Walker's Case,* 443 Mass. 157 (2004) (*Walker I*). At issue now is the application of G. L. c. 152, § 51A,[1] in the unusual circumstances of this case, in which Walker's entitlement to compensation for his injuries was established by a reviewing board decision that was subsequently amended by the board itself and then reversed by

---

[1]General Laws c. 152, § 51A, provides: "In any claim in which no compensation has been paid prior to the final decision on such claim, said final decision shall take into consideration the compensation provided by statute on the date of the decision, rather than the date of the injury."

this court in one respect. We conclude that the board did not err in ruling that its original decision was the "final decision" for § 51A purposes.

1. *Background.* The "straightforward, undisputed and tragic" facts of this case are more fully set forth in our earlier decision. *Walker I, supra* at 158. In 1995, Walker, an employee of the town of Barnstable (town), became severely dehydrated while at work, causing injury to his brain. As a result, he has suffered significant brain injury, as well as bodily disfigurement, and the total loss of the use of both his arms and of both his legs.

In April, 1998, Walker filed a claim seeking compensation from the town, a self-insurer, for these injuries pursuant to G. L. c. 152, § 36, which provides for additional compensation on account of specific physical injuries enumerated in that section. The town disputed Walker's claim. An administrative judge of the Department of Industrial Accidents denied Walker's claim, finding that he was entitled to no compensation for his specific injuries because he had not shown that he had achieved "maximum medical improvement." See 452 Code Mass. Regs. § 1.07(2)(i) (1993). The administrative judge also ruled that, because Walker's losses resulted from a brain injury, G. L. c. 152, § 36A,[2] governed his claim and limited any recovery to which he might have been entitled. Walker appealed to the reviewing board (board).

What happened next was not material to our decision in *Walker I*, but it is essential to our resolution of Walker's present arguments under G. L. c. 152, § 51A. On May 15, 2002, the board issued a decision (May 15 decision), the conclusion of which purported to affirm the administrative judge's decision. It was clear from the reasoning of the May 15 decision, however, that the board agreed with the administrative judge only insofar as she found § 36A applicable to Walker's claim. The board disagreed with the administrative judge's finding that Walker had not achieved maximum medical improvement. Under this reasoning, Walker should have been entitled to some compensation for his specific injuries, albeit only the amount prescribed in § 36A

[2]General Laws c. 152, § 36A, limits the total benefits available for the injuries specified in § 36, if they resulted from "an injury involving brain damage." The proper construction of G. L. c. 152, § 36A, was the issue before us in *Walker's Case*, 443 Mass. 157 (2004) (*Walker I*).

rather than the greater amounts provided for in § 36. Nevertheless, the May 15 decision failed to order the town to pay such compensation.

There followed some communication between the parties and the board, the contents of which are not entirely clear on the record before us. On June 4, 2002, the board sent the parties a draft amended decision (June 4 decision) and sought their comments. The June 4 decision made it clear that Walker was indeed entitled to compensation as calculated under § 36A and that the town would be ordered to pay such compensation. Neither party objected to this aspect of the June 4 decision or, more generally, to the board's proposal to amend its decision.[3] On or about July 1, 2002, the town paid Walker $61,494.30, the compensation due as calculated under § 36A.

On July 30, 2002, the board issued its amended decision (July 30 decision), which was in all material respects identical to the June 4 decision. The July 30 decision expressly reversed the administrative judge's decision in part and awarded benefits as calculated under § 36A. The town did not appeal from the July 30 decision.

Walker did appeal, first to a single justice of the Appeals Court, who affirmed the board's decision, and then to a panel of that court. We granted Walker's application for direct appellate review and on December 28, 2004, reversed, holding that "the limitation on unpaid compensation for specific injuries involving brain injury contained in the second paragraph of § 36A is operative only on the death of the employee." *Walker I, supra* at 170. As such, Walker was entitled to the full amount of compensation provided in § 36 for his injuries. We remanded the matter for further proceedings.

On remand, Walker made a new request: that G. L. c. 152, § 51A, be applied to his award of § 36 compensation. As previously indicated, see note 1, *supra*, § 51A, which concerns the applicable Statewide average weekly wage used to calculate an injured employee's benefits, provides: "In any claim in which

---

[3]In response to the board's request for comments, Walker asked that the amended decision include an award of attorney's fees. The town objected. The final decision did not address the issue of attorney's fees. That issue is not before us.

*no compensation has been paid* prior to the *final decision* on such claim, said final decision shall take into consideration the compensation provided by statute on the date of the decision, rather than the date of the injury" (emphasis added). After review by an administrative judge, the board ruled that "the 'final decision' for § 51A purposes is any decision awarding benefits on a claim for which 'no compensation has been paid' previously." That decision, according to the board, was its decision of May 15, 2002. The board therefore ordered that Walker's full § 36 benefits be calculated using the Statewide average weekly wage as of that date.

The town appealed, and the Appeals Court, in an unpublished memorandum and order pursuant to its rule 1:28, modified the board's decision. *Walker's Case*, 71 Mass. App. Ct. 1106 (2008). The Appeals Court ruled that May 15, 2002, was the date of the "final decision" for § 51A purposes, but only as to the amount up to the limits of § 36A. As to the difference between that amount and the full amount of § 36 benefits, the Appeals Court ruled that our December, 2004, decision in *Walker I, supra,* was the "final decision." Because *some* compensation had been paid in July, 2002, before the release of *Walker I,* the Appeals Court ordered that the amount over the § 36A limit be calculated using the Statewide average weekly wage as of the date of Walker's injury in 1995. We granted Walker's application for further appellate review and now affirm the decision of the board.

2. *Discussion.* The sole issue before us is whether the board properly ruled that May 15, 2002, was the "final decision" date for § 51A purposes. "The interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference." *Gateley's Case,* 415 Mass. 397, 399 (1993). "The party challenging the board's decision bears a 'heavy' burden of proving that the decision is invalid. *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.,* 448 Mass. 45, 51 (2006), citing *Box Pond Ass'n* v. *Energy Facilities Siting Bd.,* 435 Mass. 408, 412 (2001)." *Alves's Case,* 451 Mass. 171, 173-174 (2008). Further, the workers' compensation act "is to be interpreted 'so far as may be, to promote the accomplishment of its beneficent design.' " *Walker I, supra* at 160, quoting *Neff* v. *Commissioner of the Dep't of*

*Indus. Accs.*, 421 Mass. 70, 73 (1995). Accordingly, "we give this remedial statute a 'broad interpretation.' " *Walker I, supra* at 161, quoting *Neff* v. *Commissioner of the Dep't of Indus. Accs., supra.* With these standards in mind, we consider the purpose of § 51A.

General Laws c. 152, § 51A, prescribes that an employee's benefits be calculated using the Statewide average weekly wage at the date of the decision, rather than the date of injury, if no compensation has been paid before the date of the final decision. The purposes of § 51A are "to avoid obsolescence of compensation rates by requiring benefits to be computed in accordance with the statutory rate in effect at the time of the final decision, when no payments have been made during the period the claim has been contested," *McLeod's Case*, 389 Mass. 431, 435 (1983), and to "encourage insurers to make a prompt determination and payment of undisputed compensation to claimants likely to be facing fiscal problems." *Madariaga's Case*, 19 Mass. App. Ct. 477, 482-483 n.7 (1985). See L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 18.30, at 103 (3d ed. 2003) (§ 51A "was added in order to enhance benefits to those employees who had been deprived of compensation during protracted disputes and was intended to discourage insurers from unreasonably withholding payment of benefits until a 'final decision' of the board was issued").

The board's decision is eminently reasonable in light of these important goals. The board interpreted the term "final decision" in § 51A to mean "any decision awarding benefits on a claim for which 'no compensation has been paid' previously," that is, the last such decision before the insurer pays compensation on the employee's claim. Under this ruling, if an insurer fails to pay any compensation until a decision is issued awarding benefits on a claim, the insurer will be required to pay benefits using the average weekly wage on the date of the decision. As this will typically be higher than the average weekly wage on the date of the injury, the board's ruling encourages insurers to pay promptly. Moreover, here — in a real sense — the May 15 decision *was* the final decision on Walker's § 36 claim. It was in the May 15 decision that the board ruled that, contrary to the administrative judge's view, Walker had reached maximum medical

improvement and thus was entitled to compensation for his specific injuries. The town thereafter paid Walker the benefits as required by that ruling, and the ruling has never been challenged.

The town argues that the "final decision" is either the July 30 decision or our decision in *Walker I, supra.* Neither argument is persuasive in the circumstances of this case, particularly in light of the town's " 'heavy' burden of proving that the [board's] decision is invalid." *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd., supra.* Because the town did pay some compensation on Walker's claim before either of these decisions, a ruling that either one was the "final decision" under § 51A would require that his benefits be calculated as of the date of injury in 1995, to Walker's great disadvantage. The town has shown no reason why the board should have been compelled to do so. The board ruled in the May 15 decision that Walker had achieved maximum medical improvement and was entitled to specific injury benefits. The July 30 decision did not alter or add to that ruling. Indeed, nothing new was decided in the July 30 decision. Rather, the board simply corrected the formal inconsistency contained in the May 15 decision by expressly reversing the administrative judge's decision in part and ordering the town to pay benefits to Walker. We will not permit the town to capitalize on the board's error. Further, the town made its payment only after the board distributed a draft amended decision, which made it clear that such an order was imminent. We agree with the Appeals Court that the town, "knowing what the correction would be, cannot avoid the impact of § 51A by its rush to payment before the [July 30] decision was filed." The board did not err by declining to treat its July 30 decision as the "final decision" under § 51A.

Nor do we think the board was compelled to consider our opinion in *Walker I, supra,* the "final decision" for § 51A purposes.[4] We did not decide in *Walker I* that Walker was entitled to compensation for his specific injuries; his entitlement to at least

---

[4]Walker suggests that *Walker's Case,* 443 Mass. 157 (2004) (*Walker I*), should be deemed the "final decision," but that the payment made by the town in July, 2002, should *not* be considered to be any compensation on Walker's § 36 claim because the payment was made under § 36A. Under this theory Walker would have his § 51A benefits calculated as of December, 2004. Assuming this argument is properly before us where Walker did not

some compensation had already been established and was not being challenged. The issue before us in *Walker I* was whether he was entitled to the full *amount* of compensation prescribed in G. L. c. 152, § 36, or to a lesser amount as provided in G. L. c. 152, § 36A. Moreover, treating *Walker I* as the final decision would not encourage prompt payment, but would reward the town for its delay.[5] We cannot fault the board for declining to do so.[6]

The town's payment to Walker was anything but prompt. The town paid Walker no compensation for his specific injuries until after the board decided that he was entitled to such compensation, some four years after Walker filed his § 36 claim and seven years after he was injured.[7] In these circumstances, to hold, as the town argues, that either the board's July 30, 2002, decision or our decision in *Walker I*, on December 28, 2004, was the "final decision" under § 51A would require that Walker's benefits be calculated as of the date of his injury in 1995 merely because the town paid some compensation after it knew it would be ordered to do so, but before the order was formally issued. Such a result would frustrate the purposes of that statute. The town has not carried its heavy burden of showing that the board's decision was invalid.

---

cross-appeal from the board's decision, we disagree. The board ruled that the amounts paid by the town were in fact § 36 benefits, albeit erroneously capped under § 36A. It reasoned that "[t]here are no specific losses to be paid to § 36A beneficiaries other than those set out in § 36." Walker has not shown that the board's interpretation of these statutes is invalid.

[5]Similarly, the Appeals Court's result paradoxically requires the *least* promptly paid portion of Walker's compensation — the portion above the § 36A cap — to be calculated using the *lowest* average weekly wage. This result frustrates the purposes of § 51A. It also finds no support in the language of § 51A, which does not contemplate dividing an employee's claim into two or more portions ("any *claim* in which no compensation has been paid prior to the final decision on such *claim*" [emphasis added]).

[6]An appellate court decision, such as our decision in *Walker I*, *supra*, presumably could be considered the "final decision" for § 51A purposes if the insurer has paid nothing until after such a decision.

[7]The town asserts that at various times while Walker's § 36 claim was pending, it offered to pay him compensation as calculated under § 36A. However, the board struck all references to any such offers from the town's brief. The town has not suggested that this was an abuse of discretion. Moreover, we agree with the board's reasoning that "[o]ffers to pay compensation are not the equivalent of payment of compensation and are thus irrelevant to the application of § 51A . . . ."

In sum, the board properly ruled that its May 15 decision was the "final decision" for § 51A purposes. Walker is entitled to have his benefits calculated using the average weekly wage as of May 15, 2002. In addition, as the prevailing party, Walker is entitled to an award of reasonable attorney's fees and costs resulting from this appeal. G. L. c. 152, § 12A.

3. *Conclusion.* The decision of the board of November 30, 2006, is affirmed.

*So ordered.*